IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHARAN RENE BOUDREAU, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-01623-E |
| NOKIA OF AMERICA CORPORATION, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss Plaintiff's Third Amended Complaint filed by Defendant Nokia of America Corporation (NAC) (Doc. 32). Having considered the motion, the parties' briefing, and applicable law, the Court finds the motion should be granted in part and denied in part for the following reasons.

### BACKGROUND

The following is taken from plaintiff Sharan Rene Boudreau's Third Amended Original Complaint.

In August 2004, Alcatel USA Marketing Inc. hired Boudreau as corporate counsel. Alcatel USA Marketing Inc. subsequently became part of Alcatel-Lucent USA Inc., which "Nokia" acquired in January 2016. Alcatel-Lucent USA Inc. became NAC in January 1, 2018.

On April 18, 2017, Nassib Abou-Khalil, head of Customer Operations Legal & Compliance (CO L&C), told Boudreau that Genevieve Silveroli, head of CO L&C for the North American Region (NAM), was leaving. Abou-Khalil advised that Boudreau was a candidate to temporarily fill Silveroli's role while he found a replacement. He also told Boudreau that she could apply for the permanent position, but advised that there would be a complete

1

interview process and he would consider both internal and external candidates. Abou-Khalil arranged a call between Boudreau and Ricky Corker, head of Customer Operations for NAM, regarding the temporary position; Boudreau spoke with Corker, who did not have many questions and said he would defer to Abou-Khalil. Abou-Khalil ultimately selected Juan Pablo Guzman, head of CO L&C for Latin America, to serve in the temporary role. Guzman, a male, was younger than Boudreau.

Abou-Khalil subsequently again "encouraged" Boudreau to apply for the head of CO L&C for NAM position, and, on May 18, 2017, she applied. On June 9, 2017, she interviewed with Abou-Khalil and two HR representatives. Among other things, she described her previous management experience; "[e]veryone seemed satisfied and positive." In July 2017, Boudreau interviewed with Alex Mendoza, Riika Tieaho, and "JL," again discussing, among other topics, her management experience. Boudreau also met with Corker in July, and their conversation "went very well." Again, Boudreau discussed her experience as a commercial attorney and managing people and teams.

On August 22, 2017, Abou-Khalil told Boudreau that she had not been selected for the position. The requisition had not been closed, but they had another candidate for the position and, even if the candidate did not accept it, the position would not be offered to Boudreau. Abou-Khalil told Boudreau that she was a highly valued team member and he received very positive feedback about her, but she was not selected primarily due to her lack of management experience. Boudreau explained that, although it may not have come across clearly, she had significant management experience. Abou-Khalil indicated that Boudreau's interview responses did not show the kind of experience he sought and "everyone" was concerned that Boudreau might not have enough management experience.

2

His comments did not make sense to Boudreau, and she was suspicious that he was not being honest. However, and despite Abou-Khalil explicitly telling her otherwise, Boudreau thought "she might still get the promotion if she could find ways to show Abou-Khalil that she had the requisite management experience and skill."

The candidate selected for the position did not accept it, and Abou-Khalil continued his search. Boudreau told Esa Niinimaki, her boss/line manager and Abou-Khalil's "peer," about Abou-Khalil's comments, and Niinimaki responded, "that's interesting, especially given how flat our organization is." To Boudreau, this indicated Niinimaki knew Abou-Khalil's explanation for not promoting Boudreau was not credible. Niinimaki said he knew Boudreau had a lot of management experience and would be great for the job. He also suggested she could lead teams in some way to demonstrate her leadership abilities. His encouragement indicated to Boudreau that her "continued quest for the position was not futile."

Abou-Khalil ultimately hired Jody Bishop as head of CO&L for NAM and, on January 29, 2018, introduced Bishop to Boudreau. Boudreau observed that Bishop, a male, was approximately ten years younger than her and "looked very uncomfortable" when Boudreau asked him about his experience. After reviewing Bishop's LinkedIn page, it was obvious to Boudreau that she was far more qualified than Bishop for the position and her lack of management experience was a pretext for age and sex discrimination.

On April 13, 2018, Boudreau received her annual review from Niinimaki. He implied she was performing well, but gave her a "3" rating instead of a "4." He told her she was a "true team player" and had "done a great job supporting" Bishop. But, Niinimaki also referred to a comment by Abou-Khalil questioning Boudreau's support for Bishop because

3

she was "asking a lot of questions about [his] qualifications and experience and had been going onto LinkedIn every day." Niinimaki indicated he intended to see that Abou-Khalil "doesn't go around telling other people things like this." Her conversation with Niinimaki caused Boudreau to believe Abou-Khalil had spoken to others about her performance, her role as an equal to Bishop was being diminished, and she was likely to be demoted. Further, the conversation, coupled with Bishop's hiring, was "crushing" to Boudreau. She worked shorter hours, stayed home, and told people she was sick because she could not focus or move. She sought help from doctors.

On April 16, 2018, Boudreau spoke with Julie Liptak, VP for HR Americas. They discussed Boudreau's non-selection for the promotion, Abou-Khalil's comments, and that Abou-Khalil "had made it so uncomfortable working at [NAC] that [Boudreau] was incapacitated, that she could not function and was terrified of what was coming next." Liptak told Boudreau she would investigate.

On April 20, 2018, Liptak reported that one of the HR representatives who had interviewed Boudreau told Liptak that Corker had agreed the candidate who was offered the position in August 2017 was the better candidate. Based on that information and her discussion with the HR representative, Liptak did not feel any action was necessary. Liptak advised that Boudreau could consider taking short term disability if she qualified. On April 23, 2018, Boudreau began short term disability leave.

On August 24, 2018 Boudreau filed a charge of sex discrimination, age discrimination, and retaliation with the Equal Employment Opportunities Commission (EEOC) and the Texas Workforce Commission (TWC).

4

Boudreau remained on short term disability. On October 28, 2018, NAC terminated Boudreau, and, by letter, advised that her employment was terminated because she would "not be able to return to work by the expiration of [her] STD benefits."

On July 11, 2019, Boudreau filed an Amended Charge of Discrimination alleging her termination was sex and age discrimination and retaliation for having filed her August 24, 2018 discrimination charge.

Boudreau filed this action on July 5, 2019. In her Third Amended Complaint, she asserts the following causes of action: (1) age discrimination in violation of the Age Discrimination in Employment Act (ADEA) and the Texas Commission on Human Rights Act (TCHRA); (2) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and the TCHRA; (3) retaliation in violation of the ADEA, Title VII, and the TCHRA; (4) gender-based pay discrimination in violation of Title VII and the TCHRA; and (5) gender-based pay discrimination in violation of the Equal Pay Act (EPA). NAC moves to dismiss each of the claims against it.[1]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to

---

[1] NAC previously filed a motion to dismiss Boudreau's First Amended Complaint (Doc. 8). Thereafter, Boudreau filed motions for leave to file a Second and Third Amended Complaint (Docs. 14 & 26). The Court granted Boudreau leave to file the Third Amended Complaint and denied as moot the other outstanding motions (Doc. 30). In her response to the pending motion to dismiss, she asserts the Court should deny the motion under the law of the case doctrine. Specifically, Boudreau asserts that the Court, by previously granting her motion for leave to file the Third Amended Complaint, rejected the Rule 12(b)(6) arguments asserted by NAC in its previous motion to dismiss. "As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *See Christianson v. Colt Indus. Oper. Corp.*, 486 U.S. 800, 815–16 (1988) (internal quotation marks and citation omitted); *Clifford v. Gibbs*, 298 F.3d 328, 331 (5th Cir. 2002) (the doctrine "applies only to issues actually decided"). The Court denied as moot NAC's previous motion to dismiss; it did not address the merits. Because the Court in no way decided the law applicable to this case, the law of the case doctrine does not apply.

5

state a claim upon which relief can be granted." *Id.* 12(b)(6).  In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citations omitted).  "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Thus, a claim "is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).

**ANALYSIS**

1. <u>Exhaustion of Failure to Promote Claims</u>

NAC first asserts that Boudreau's failure to promote discrimination claims under the ADEA, Title VII, and the TCHRA must be dismissed because she failed to timely file a related charge of discrimination with the EEOC or TWC.  Before filing a civil action for

6

discrimination under the ADEA and Title VII, a plaintiff must exhaust administrative remedies, which include filing a charge of discrimination with the EEOC within 300 days after an alleged violation occurred. *Julian v. City of Houston*, 314 F.3d 721, 726 (5th Cir. 2002); *Taylor v. United Parcel Servs.*, 554 F.3d 510, 521 (5th Cir. 2008); 29 U.S.C. § 626(d); 42 U.S.C. § 2000e–5(e)(1). Similarly, the TCHRA requires a plaintiff to exhaust her administrative remedies before filing a civil action by filing a complaint with the TWC within 180 days after the alleged unlawfully employment practice occurred. *Adams v. DaimlerChrysler Servs. NA LLC*, 252 F. App'x 681, 683 (5th Cir. 2007); TEX. LAB. CODE ANN. § 21.202(a).

The period for filing a charge begins to run once the plaintiff knows or should been aware of the discriminatory act, not when she first perceives a discriminatory motive. *Ajayi v. Walgreen Co.*, 562 F. App'x 243, 246 (5th Cir. 2014) (citing *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217 n.2 (5th Cir. 1992)); *see also Pacheco v. Rice,* 966 F.2d 904, 906 (5th Cir. 1992) ("To allow plaintiffs to raise employment discrimination claims whenever they begin to suspect that their employers had illicit motives would effectively eviscerate the time limits prescribed for filing such complaints."). Failure to promote, like termination and demotion, is a discrete event that should put an employee on notice that a cause of action has accrued. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," and each of these discriminatory or retaliatory incidents is "a separate actionable 'unlawful employment practice.'"); *Frank v. Xerox Corp.,* 347 F.3d 130, 136 (5th Cir. 2003); *Allison v. City of Fort Worth, Tex.*, 60 F. Supp.2d 589, 597 (N.D. Tex. 1999) ("Time

starts running when a plaintiff knows of the act—here, denial of promotion—not when he perceives a discriminatory motive caused the act.").

Here, Boudreau was told that she did not, and would not, receive the promotion she sought on August 22, 2017. Although she may have believed her "continued quest for the position was not futile" after her discussions with Abou-Khalil and Niinimaki, the petition does not allege any facts to show Abou-Khalil's statement was untrue and that Boudreau remained under consideration for the position.

Filing a charge, however, "is a precondition to filing suit" and not a jurisdictional prerequisite. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (quoting *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996)); *see Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014). Therefore, it is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Taylor*, 554 F.3d at 521 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)); *Coke v. Gen. Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir. 1981) (en banc). The Fifth Circuit has described three possible bases for equitable tolling: (1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights. *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011); *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003).

Boudreau asserts she pleads fact to show equitable tolling and, specifically, that she was unaware of facts giving rise to her claim because NAC intentionally concealed them. A plaintiff's lack of awareness of the facts of a claim supports equitable tolling only when "the

employer's affirmative acts mislead the employee and induce him not to act within the limitations period." *Manning, LLC*, 332 F.3d at 880. A plaintiff need not prove intentional misconduct by the employer, but must demonstrate "the defendant's conduct, innocent or not, reasonably induced the plaintiff not to file suit within the limitations period." *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 391 (5th Cir. 2002) (quoting *McGregor v. Louisiana State Univ. Bd. of Supervisors*, 3 F.3d 850, 865–66 (5th Cir. 1993)).

At this stage, the Court must accept as true all of Boudreau's factual allegations. Boudreau alleges facts to raise an inference that affirmative conduct by NAC employees reasonably misled her about the facts supporting her claim. Specifically, she was told that she did not receive the promotion primarily due to her lack of management experience. Only when Bishop, a younger male with less management experience, received the promotion, was Bishop made aware of the facts necessary to support a discrimination charge. *See, e.g., Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 881 (5th Cir. 1991) (equitable estoppel applied and limitations on ADEA claim did not commence until employee learned he had been replaced by younger employee when employer told him he was being discharged as part of required work force reduction and would be considered for re-hiring); *Coke*, 640 F.2d at 595 (employer's misrepresentation that employee would be reinstated induced foreseeable forbearance in filing ADEA claim).

Accordingly, the Court finds that Boudreau has sufficiently alleged facts to show the time for filing a charge related to her failure to promote claims was equitably tolled until January 29, 2018, when she learned Bishop was selected for the position she sought. She filed a charge of age and gender discrimination with the EEOC and TWC on August 24, 2018, within 300 days. Because her charge was timely filed with respect to her ADEA and

Title VII claims for failure to promote, NAC's motion to dismiss those claims must be denied. However, because Boudreau did not file her charge within 180 days after she learned Bishop was selected for the position, her TCCHRA failure to promote claim must be dismissed. *See Adams*, 252 F. App'x at 683; TEX. LABOR CODE ANN. § 21.202(a).

2. *Wage Discrimination Claims*

NAC contends Boudreau's pay discrimination claims under the EPA, Title VII, and the TCHRA fail because she has not alleged facts to show any similarly situated male employees were paid more than she was paid. Specifically, her allegations, which include a list of males in the NAC legal department who "upon information and belief" were paid more than Boudreau and a May 2019 statement addressing gender pay disparities by Rajeev Suri, Chief Executive Officer of NAC's parent company, are not sufficient to state a claim under the applicable statutes.

Boudreau's EPA and Title VII discrimination claims both require a showing that male employees who had the same work responsibilities received better pay. Under the EPA, a plaintiff must show that "(1) her employer is subject to the Equal Pay Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison." *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 616–17 (5th Cir. 2020) (citing *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993)); *see* 29 U.S.C. § 206(d)(1). Under Title VII,[2] the plaintiff must show "she is a member of a protected class who 'was paid less than a non-member for work requiring substantially the same responsibility.'" *Badgerow*, 974 F.3d at 617 (quoting *Taylor*, 554 F.3d at 522). That is, she

---

[2] The standard is the same for TCHRA wage discrimination claims. *See Lindsley v. TRT Holdings*, 3:17-CV-029420-X, 2019 WL 6467256, at *5 (N.D. Tex. Dec. 2, 2019).

must show "her circumstances were nearly identical to those of a better-paid employee who is not a member of her protected class." *Id*. at 185.

Here, Boudreau's very general allegations provide no basis to compare the skill, effort, and responsibility demanded by her position and the positions of the males listed in the Third Amended Complaint or that their circumstances were nearly identical. She simply alleges, without facts in support, that she and other females in the NAC legal department (1) "performed work that required equal skill, effort and responsibility under similar working conditions" as male employees and (2) were members of a protected class that were paid less than the males for "work requiring substantially the same responsibility." Suri's statement, which indicates only that NAC's parent corporation was going to address a "small but statistically significant 'unexplained pay gap'" in the company and the majority of the beneficiaries would be women, also does not provide any specific factual support for her EPA, Title VII, and TCHRA claims for wage discrimination. Accordingly, the Court finds the allegations are insufficient to state a plausible wage discrimination claim. *See, e.g.*, *Espinoza v. San Benito Consol. Indep. Sch. Dist.*, 753 F. App'x 216, 220 (5th Cir. 2018) ("officers' complaint does not explain how their job duties were the same as [plaintiff's]"); *Taylor v. Texas S. Univ.*, No. H-19-1225, 2019 WL 4394696, at *3 (S.D. Tex. Sept. 13, 2019) (very general allegations provide no basis to compare the skill, effort, and responsibility demanded by plaintiff's and the male employee's position or support inference that male employee was similarly situated to plaintiff in area of job performance and insufficient to state plausible equal pay act claim); *Compare Connor v. Office of Att'y Gen. of Tex.,* No. A-14-CV-961 LY, 2015 WL 1004304, at *3 (W.D. Tex. Mar. 5,

2015) (plaintiff "alleged specific facts regarding her job duties and the job duties of her male comparators and thus has alleged a prima facie claim of wage discrimination").

3. *Retaliatory Hostile Work Environment Claims*

NAC contends Boudreau's retaliatory hostile work environment claims under the ADEA, Title VII, and the TCHRA fail as a matter of law because she has not alleged sufficient facts to show that she was subjected to a hostile work environment and her inquiries into Bishop's qualifications do not qualify as a protected activity.

To state a *prima facie* case of retaliation under the ADEA, Title VII, and TCHRA, a plaintiff must show: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse action. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015) (citation omitted) (ADEA); *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (Title VII); *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011) (TCHRA). Although the Fifth Circuit has not yet recognized a retaliatory hostile work environment cause of action, other circuits have and Fifth Circuit courts have assumed such a claim can be brought. *Montgomery-Smith v. George*, 810 F. App'x 252, 258 (5th Cir. 2020); *Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, No. 3:16-CV-1034-D, 2017 WL 274133, at *2 (N.D. Tex. Jan. 20, 2017). For claims of a retaliatory hostile environment, district courts in this circuit follow a modified approach: "the first element would require proof that the plaintiff had engaged in a protected activity, and the third element would require demonstration of a causal connection between the harassment and the protected activity." *Zavala*, 2017 WL 274133, at *3.

Here, the law on hostile work environment claims in the context of discrimination

12

and sexual harassment is instructive. *Montgomery-Smith*, 810 F. App'x at 258. Under Title VII, there is a violation when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id*. (quoting *E.E.O.C. v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007). "For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive." *Id*. at 258–59. "To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Id*. at 259. The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Id*. (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Boudreau asserts NAC's telling her she did not receive the promotion, "subjecting her to criticism," giving her a "3" instead of a "4" on her evaluation, and "urging" her to take medical leave in response to her complaint, constituted actionable harassment (Doc. 38, p. 20). These incidents do not amount to the type of "extreme" conduct required by the Supreme Court to make out a claim for a hostile work environment. Denial of a promotion is "not offensive or harassing in the way necessary to support a hostile work environment claim." *Montgomery-Smith*, 810 F. App'x at 259. Further, criticism of an employee's work performance does not meet the standard required for a harassment claim. *Credeur v. Louisiana Through Office of Att'y Gen.*, 860 F.3d 785, 796 (5th Cir. 2017). Considering the

13

totality of the circumstances, the conduct alleged, alone and in combination, is simply not severe or pervasive enough to support a hostile work environment claim. Accordingly, the Court finds her claims for a retaliatory hostile work environment must be dismissed.

Further, the Court finds that Boudreau has not alleged facts to show she engaged in any protected activity prior to lodging her age and sex discrimination complaints with Liptak. An individual engages in a protected activity if she: (1) opposes an employment practice made unlawful, or (2) makes a charge, testifies, assists, or participates in a related investigation, proceeding, or hearing. *Byers v. The Dallas Morning News, Inc.*, 209 F.3d 419, 427–28 (5th Cir. 2000). Boudreau's personal investigation of Bishop's qualifications, without more, cannot form the basis of a retaliation claim. She alleges Abou-Khalil's "question[ing] her character" indicates he perceived her questions about Bishop's qualifications as a complaint that she had been denied the promotion "due to her sex and age." (Doc. 31, p. 24-25). However, the Fifth Circuit has not adopted a perception theory of retaliation, and Boudreau's "belief" that Abou-Khalil had such a perception is insufficient to support her claims. *McKinney v. Bolivar Med. Ctr.*, 341 F. App'x 80, 83 (5th Cir. 2009). For this reason, Boudreau also fails to sufficiently allege any claim for retaliatory hostile work environment based on conduct that occurred prior to her April 16, 2018 meeting with Liptak.

4. *Discrimination and Retaliation Claims Related to Boudreau's Termination*

NAC also contends Boudreau's discrimination and retaliation claims based on her termination fail as a matter of law because she admits that NAC's legitimate, non-discriminatory and non-retaliatory reason for her administrative termination was true.

The ADEA forbids "an employer … to discharge any individual … because of such

14

individual's age." 29 U.S.C. § 623(a)(1); *Robertson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Under Title VII, it is "an unlawful employment practice for an employer ... to discharge ... any individual ... because of such individual's race ... sex or national origin." 42 U.S.C. § 2000e-2(a)(1). The TCHRA also prohibits employer discrimination directed at the "terms, conditions, or privileges of employment" because of race, color, disability, religion, sex, national origin or age. TEX. LAB. CODE ANN. § 21.051(1).[3]

Claims of discrimination and retaliation may be established by either direct or circumstantial evidence. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007). For circumstantial evidence cases, courts follow the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*; *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013). The plaintiff must first establish a prima facie case. For discrimination, the plaintiff must show that she: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556; *Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir. 2013), *aff'd*, 544 U.S. 228 (2005). For retaliation, the plaintiff must establish that: (1) she participated in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy*, 492 F.3d at 557. If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate,

---

[3] "[T]he law governing claims under the TCHRA and Title VII is identical," *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999); therefore, the Court will interpret and consider Boudreau's federal and state claims together.

nondiscriminatory or nonretaliatory reason for its employment action. *Id*. If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. *Id*.

NAC asserts that Boudreau admits that its stated reason for terminating her was "true," but she responds, and the Court agrees, that the Third Amended Petition does not admit to the truth of the reason given for the termination. Instead, she alleges that she was terminated "because of her sex and age and in retaliation for protected activity." To be sure, the facts alleged in support of her discriminatory and retaliatory termination claims are tenuous. But NAC has not specifically challenged them in its motion to dismiss. Further, at the pleading stage, Boudreau need not make her prima facie case. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002)). Assuming all factual allegations as true and drawing all reasonable inferences in favor of Boudreau as it must, the Court finds she pleads enough facts to state claims for discrimination and retaliation related to her termination.

## Conclusion

For the reasons above, NAC's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 32) is **GRANTED in part** and **DENIED in part**. Because Boudreau did not sufficiently allege a plausible claim for wage discrimination under the EPA, Title VII, or the TCHRA or a plausible claim for retaliatory hostile work environment under the ADEA, Title VII, or the TCHRA, the motion to dismiss is **GRANTED** as to those claims, and those claims are **DISMISSED**. Because Boudreau failed to exhaust administrative remedies for her failure to promote discrimination claim under TCHRA, the motion to

16

dismiss also is **GRANTED** as to that claim, and it is **DISMISSED with prejudice**. The motion to dismiss is **DENIED** as to Boudreau's failure to promote discrimination claims under the ADEA and Title VII and termination discrimination and retaliation claims under the ADEA, Title VII, and the TCHRA.

Despite having amended her complaint three times already, Boudreau requests that she be granted leave to cure any defects. If she can, in good faith, replead facts to support her wage discrimination claims or her retaliatory hostile work environment claims, she may do so on or before January 15, 2021. *See* Fed. R. Civ. P. 15(a)(2). Otherwise, the disposition of those claims will be converted into dismissal with prejudice.

NAC's request for attorneys' fees and costs is **DENIED**.

SO **ORDERED**; signed December 18, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE